**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action Number 1:18-cv-003322-STV

Clifford L. Edwards,

    Plaintiff,

v.

BC Services, Inc.,

    Defendant.

---

**DEFENDANT'S MOTION AND MEMORANDUM BRIEF FOR SUMMARY JUDGMENT**

    Defendant, BC Services, Inc. (BC), through its attorneys, respectfully submits this Motion and Memorandum Brief for Summary Judgment pursuant to Fed.R.Civ.P. 56.

## I.    INTRODUCTION

    Plaintiff's Complaint alleges BC violated various provisions of the Fair Debt Collection Practices Act (FDCPA) with respect to a debt for $7.20 (the Debt). The Complaint alleges BC violated 15 U.S.C. §§ 1692e and 1692f. Plaintiff contends that a letter from BC dated December 11, 2018 (the Letter) constitutes a false, deceptive, or misleading representation under § 1692e(2), (5), and (10) because a line item that states "Interest: $0.00" falsely represents that interest may accrue on the debt. Complaint, ¶ 31; Exhibit D. Plaintiff also alleges BC falsely represented the legal status of the Debt since it arose from a workers' compensation claim and as a result, Plaintiff has no responsibility for it. Complaint, ¶ 32.

Plaintiff alleges BC violated § 1692f in two separate ways. First, the "Interest: $0.00" line item suggests that BC may collect an amount not permitted by law or the agreement that created the Debt contrary to § 1692f(1). Complaint, ¶ 35. Second, by allegedly advising Plaintiff in a December 19, 2018 phone call that it will continue to collect the Debt from him that he does not owe BC used unfair or unconscionable means to collect the Debt.  Complaint, ¶ 36.

BC asserts there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. The § 1692e claims fail because the Letter accurately states that no interest was due on the Debt and therefore, cannot constitute a false, misleading, or deceptive representation. Furthermore, C.R.S. § 5-12-101 specifically permits interest to accrue on a debt. Moreover, BC cannot be held responsible for falsely misrepresenting it could collect the Debt because it reasonably relied on information from its client, Colorado Imaging Associates (CIA), that the Debt was not a workers' compensation claim. The § 1692f claims fail for the same reasons. The § 1692f claims based on the December 19, 2018 phone call also fail either because the FDCPA does not apply to communications initiated by someone other than the debt collector or the communication was not in connection with the collection of a debt.

## II.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden. A genuine fact does not exist simply by the nonmoving party demonstrating some metaphysical doubt as to

the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the nonmoving party must come forward with evidence significantly probative of its claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586.

A party opposing a properly supported motion for summary judgment on the grounds that material facts are disputed has the burden to demonstrate a genuine issue for trial on a material matter. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). Under Fed.R.Civ.P. 56(c), a party opposing summary judgment may not rest solely on the allegations in the pleadings, but must instead go beyond the pleadings and by affidavits, or by depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

The nonmoving party must show that a genuine issue remains for trial with respect to the dispositive matters for which he carries the burden of proof. *Nat'l AM. Ins. Co. v. Am. Re-Ins. Co.,* 358 F.3d 736, 739 (10th Cir. 2004). In so doing the nonmoving party may not rest on the pleadings but must set forth specific facts. Fed. R. Civ. P. 56(e)(2); *Justice v. Crown Cork & Seal Co., Inc.,* 527 F.3d 1080, 1085 (10th Cir. 2008). Judgment is appropriate as a matter of law when the non-moving party fails to make an adequate showing of an essential element of its case to which it has the burden. *Celotex*, 477 U.S. at 323.

Here, if the record as it stands now is taken as a whole, a rational trier of fact could not find for Plaintiff. Further, Plaintiff cannot point to any specific facts showing that there is a genuine issue for trial. Consequently, summary judgment must be entered in BC's favor.

### III.   THE FDCPA

To state a claim under the FDCPA for improper means of debt collection, Plaintiff must make sufficient allegations to show that the means used to collect the debt are 1) false, misleading, or deceptive; or 2) that such means are unfair or unconscionable. 15 U.S.C. §§ 1692e and 1692f.  "The express purpose of passing the FDCPA was to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002). (internal quotations omitted).

In analyzing FDCPA claims, debt collectors' communications are generally viewed from the perspective of how the least sophisticated consumer would interpret the notice received from the debt collector.  *Irvin v. I.C. Systems, Inc.,* 176 F. Supp. 3d 1054, 1060 (D. Colo. 2016) (citing *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993)). "The hypothetical consumer, however, 'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Ferree v. Marianos,* 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (unpublished) (quoting *Clomon,* 988 F.2d at 1319); *see also Chaudhry v. Gallerizzo,* 174 F.3d 394, 408-

09 (4th Cir.1999) (doctrine is designed to protect "naive" consumers who do not understand law or finance, not people with unrealistic or irrational expectations). Furthermore, a debt collector's "communications must be examined as a whole" because "even the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Management,* 550 F.3d 294, 299 (3rd Cir. 2008). Courts apply a balancing test that "(1) ensures the protection of all consumers, even the naïve and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon,* 988 F.2d at 1320.

Nevertheless, the FDCPA "can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme…. The law would be best served by challenging clear violations rather than scanning for technical missteps that bring minimal relief to the individual debtor but a possible windfall to the attorney."  *Bailey v. Security Nat'l Services Corp.,* 154 F.3d 384, 388 (7th Cir. 1998).

### IV.    ARGUMENT

A. *A line item in a collection letter stating "Interest: $0.00" is not a false, deceptive, or misleading representation in connection with the collection of a debt.*

Section 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The section provides a nonexhaustive list of examples that are considered per se violations.

BC submits that in reading the Letter in its entirety, the line item "Interest $0.00" could not be viewed by any reasonable consumer as a false, deceptive, or misleading representation or means to collect a debt.

To begin with, the Letter accurately itemizes the amount of the Debt stating:

"Principal: 7.20      Interest: $0.00      Balance: $7.20"  Exhibit D.

This itemization cannot be considered misleading because it accurately states the amount owed: $7.20. The total amount of the debt as of the date a letter is sent is all that the FDCPA requires. The Letter sets forth a specific amount of the Debt and thus, BC has complied with the FDCPA. *See Aker v. Americollect, Inc.,* 854 F.3d 397, 399 (7th Cir. 2017) (FDCPA is satisfied by demanding a specific amount.  Debt collector calculated interest, added it to principal, and demanded payment, rather than leaving the debtors to guess how much they owed; FDCPA provides a means to contest whether amount claimed is due. 15 U.S.C. § 1692g(b); implies naming incorrect figure is not automatically a violation).  Indeed, providing a consumer with the right to notify the debt collector that the debt, or any portion of it is disputed under 15 U.S.C. § 1692g(b) would be completely unnecessary if an error of the amount due is a per se violation.

Multiple courts have held the FDCPA does not require a debt collector to state a debt may increase or change over time.  *See Adlam v. FMS, Inc.,* 2010 WL 1328958, at *3 (S.D.N.Y. Apr. 5, 2010) ("the FDCPA does not require that debt collection letter warn a consumer that the debt may increase"); *Pifko v. CCB Credit Servs., Inc.,* 2010 WL 2771832, at *4 (E.D.N.Y. July 7, 2010) (the collection letter accurately reflected the amount due and there was no obligation to state the amount may increase over time due

to interest); *accord Schaefer v. ARM Receivable Mgmt., Inc.*, 2011 WL 2847768, at *5 (D. Mass. July 19, 2011).

Other courts have found a collection letter that provides "Interest: $0.00" is not misleading or deceptive. In *Delgado v. Client Services, Inc.* 2018 WL 1193741 (N.D. Ill. March 7, 2018) the court held the itemization of "Interest 0.00" and "Other Charges 0.00" was not deceptive and would not lead the unsophisticated consumer to believe that interest and other charges would accumulate in the future if the debt was not paid. In granting a motion to dismiss the court held "[r]ather than making a false, misleading, or deceptive statement, the letter sets forth the amount due and provides an accounting of that amount, making it explicit that no part of the amount due includes interest or other charges." *Id.* at *3.

Likewise, in *Dick v. Enhanced Recovery Co.* 2016 WL 5678556 (E.D.N.Y. Sept. 28, 2016) the court found a collection letter that itemized the debt in the same manner was not deceptive. The court noted that "the [l]etter does not leave [the plaintiff] in doubt of the nature and legal status of the underlying debt; nor does it impede the consumer's ability to respond to or dispute collection." *Id.* at *4.

Both courts astutely observed that it was not the intention of Congress in enacting the FDCPA to place "debt collectors between a rock and a hard place, where they cannot simply list the amount owed, for fear of being misleading, but likewise, cannot breakdown the amount into categories either, for fear of being misleading.." *Delgado, supra,* at *4. Because the Letter accurately itemizes the amount of the Debt BC is entitled to judgment as a matter of law. *See Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004)

("[o]ne simple way to comply with § 1692e and § 1692f…would be to itemize the various charges that comprise the total amount of the debt.")

Although BC accurately itemized the amount of the Debt Plaintiff nevertheless asserts the inclusion of "Interest $0.00" violates § 1692e because the Letter misleads consumers into the false possibility that interest could be added on at some later time. *See,* Complaint, ¶ 32.   The problem is that Plaintiff's assertions are just that; assertions. *See Nat'l AM. Ins. Co. v. Am. Re-Ins. Co., supra,* at 739.  (Nonmoving party must show that a genuine issue remains for trial with respect to the dispositive matters for which he carries the burden of proof.)   *See*   Fed. R. Civ. P. 56(e)(2); *Justice v. Crown Cork & Seal Co., Inc., supra,* at 1085. (Nonmoving party may not rest on the pleadings but must set forth specific facts.)

Plaintiff is unable to set forth specific facts that interest could impermissibly be added on at some later time because no such facts exist.   To the contrary, there are multiple undisputed facts that itemizing interest at $0.00 is an accurate statement.

First, the Letter represents the only communication sent by BC.  Nothing in the Letter suggests that interest may be added on or the balance due may change. *See* Exhibit D.   The Letter does not contain any language that balance due is subject to change.  *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols and Clark, L.L.C.,* 214 F.3d 872, 876 (7th Cir. 2000) (a collection letter that contains "safe harbor" language that the balance due on a debt may increase from day to day does not constitute a false or misleading statement if the amount of the debt is variable); *See Campuzano-Burgos v.*

*Midland Credit Management, supra,* at 299 ("even the least sophisticated debtor is bound to read collection notices in their entirety.")

Second, there are no statements in either the December 18, 2018 or December 19, 2018 phone calls that even hint at a suggestion the amount of the debt may change due to interest.  *See* December 18, 2018 and December 19, 2018 recorded phone calls.

Third, the debt was paid by Pinnacol Assurance in the amount of $7.20.  (SOF No. 21; Exhibit E, ¶ 12)  Upon receipt of this amount BC considered the debt paid in full. (SOF No. 22, Exhibit E, ¶ 12)

Even if "Interest: $0.00" could be interpreted that interest may be added at a later date, it is not a false, misleading, or deceptive statement.  Colorado law expressly permits interest when money is wrongfully withheld from the date of the wrongful withholding.  *See* C.R.S. § 5-12-102(1)(a).  ("When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment…."); *See In re Tri Sys. Consulting & Design, Inc.,* 115 Bankr. 279 (Bankr. D. Colo. 1990) (Section 5-12-102 allows interest on money which is due and owing, regardless of whether the money was wrongfully withheld)**.**

Finally,  assuming *arguendo* the inclusion of interest is technically false, the statement is immaterial and therefore, does not amount to a violation of the FDCPA.  *See Wahl v. Midland Credit Management, Inc.,* 556 F.3d 643, 645 (7th Cir. 2009) (if a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA even if false in some technical sense); *See Marx v. General Revenue Corp.,* 668

F.3d 1174, 1177 (10th Cir. 2011) (FDCPA not violated when, among other things, no actual harm occurred). Here, the statement "Interest $0.00" could not materially mislead Plaintiff because he has maintained he does not owe the Debt. Complaint, ¶ 19. It has always been Plaintiff's contention that because the Debt is a workers' compensation debt, he has no responsibility for it and will not pay for it. (*Id.;* December 18, 2018 recorded phone call at 01:03). Because Plaintiff denied responsibility for the Debt the statement "Interest $0.00" could not materially mislead him in choosing his options regarding payment.

B. *BC reasonably relied on the information provided by CIA that the amount sought is not a workers' compensation debt.*

Plaintiff also alleges that BC violated various subsections of § 1692e in attempting to the collect the Debt because it was not owed. *See* Complaint, ¶ 32. Although not specifically laid out, Plaintiff submits that because there was an order finding his employer's insurance carrier is liable for payment he has no responsibility for the Debt and hence, BC may not collect the it from him. *See* C.R.S. § 8-42-101(4) (Once there has been an admission of liability or the entry of a final order finding that an employer or insurance carrier is liable for the payment of an employee's medical costs or fees, a medical provider shall under no circumstances seek to recover such costs or fees from the employee.)

Multiple courts have held that the FDCPA does not require a debt collector to conduct an independent investigation of a debt assigned to it to determine its accuracy. *See Smith v. Transworld Systems, Inc.,* 953 F.2d 1025 (6th Cir. 1992) (statute does not

require an independent investigation of the debt referred for collection); *Chaudhry v. Gallerizzo,* 174 F.3d 394, 406 (4th Cir.1999) (debt collectors do not have to "vouch for the validity of the underlying debt."); Ducrest v. Alco Collections, Inc., 931 F.Supp. 459, 462 (M.D.La.1996) (FDCPA does not impose any duty to independently investigate claims referred to it.)

Not only is there no duty to independently investigate a creditor's claim, but also, a debt collector may reasonably rely upon information provided to it from its client without violating the FDCPA.  *See Solomon v. HSBC Mortgage Corp.,* 504 Fed. Appx 702 (10th Cir. 2012) (debt collector cannot be held liable for any alleged misrepresentations because it reasonably relied upon information from its client); *Bleich v. Revenue Maximization Group, Inc.*, 233 F.Supp.2d 496, 500-01 (E.D.N.Y.2002), *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D.Del.1991) ("Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past.").

There are no material questions of fact in dispute regarding BC's reasonable reliance upon the information provided to it by CIA that the Debt was not covered by workers' compensation.

- Plaintiff provided his private health insurance card when he was admitted to the hospital.  (SOF No. 2, Exhibit A, P. 13, L. 15-20, Exhibit B)
- CIA billed Plaintiff's private insurance carrier for services rendered. (SOF No. 5, Exhibit C)

- Plaintiff's private insurance carrier paid a portion of the bill. (SOF No. 5, Exhibit C)
- CIA submits a spreadsheet containing account information when it refers an account to BC. (Exhibit E, ¶ 6)
- The spreadsheet listed Plaintiff's private insurance carrier. (SOF No. 4, Exhibit E, ¶ 6)
- The information provided on the spreadsheet is typical of the information CIA provides to CIA when it refers an account. (Exhibit E, ¶ 6)
- CIA has referred accounts to BC since 2013 and refers anywhere from 1,500 to 3,000 per month. (Exhibit E, ¶ 13)
- CIA does not refer accounts covered by workers' compensation to BC. (Exhibit E, ¶ 14)
- BC was not aware the debt may be covered by workers' compensation until the December 18, 2018 phone call. (Exhibit E, ¶ 9)
- CIA has provided accurate information in the past and BC has not received accounts from CIA where the information was erroneous or false. (Exhibit E, ¶¶ 14 and 15)

BC did not have a duty to independently investigate whether the Debt was covered by workers' compensation at the time CIA referred the Debt. Indeed, had Plaintiff exercised his rights for debt verification as set forth in the Letter and § 1692g(a)(4) BC may have determined the Debt was covered by workers' compensation. Nevertheless, upon being put on notice that Plaintiff may not have responsibility for the Debt BC did not

12

engage in further collection efforts. When it was advised on December 19, 2018 that the Debt will be paid by Pinnacol Assurance, BC closed its file once the payment was received.

Because there is no genuine dispute as to any material facts regarding its reasonable reliance on the information provided by CIA, BC is entitled to summary judgment on Plaintiff's alternate § 1692e claim.

### C. Plaintiff's § 1692f(1) claim fails because Colorado law permits BC to collect interest.

Section 1692f(1) provides it is "an unfair or unconscionable means to collect or attempt to collect any debt…unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Plaintiff asserts BC violated this subsection when it "unfairly suggested that it could collect additional amounts on a debt that Plaintiff does not owe." Complaint, ¶ 35. In this regard, Plaintiff contends BC is precluded from adding any amounts to the balance due of $7.20. By including the line item "Interest: $0.00" Plaintiff theorizes BC violated § 1692f(1) because the Letter suggests it was permitted by law to seek interest. However, since Colorado law permits a creditor to collect interest on a debt, Plaintiff's claim fails for the same reason as his § 1692e claim. Furthermore, there are no allegations that support a § 1692f claim independent of the allegations in support of the § 1692e claim. Because the Complaint alleges the same conduct that forms the basis of Plaintiff's § 1692e claim, BC is entitled to summary judgment on the § 1692f claim. *See Penn v. Cumberland,* 2012 WL 3062141,

at *9 (E.D. Va. July 25, 2012). (citing multiple cases and stating that § 1692f claims that do not allege any conduct separate from § 1692e claims must be dismissed).

> D. *There is no genuine issue on a material fact that BC used unfair or unconscionable means to collect the Debt by repeatedly telling Plaintiff it would continue its collection efforts.*

Plaintiff asserts BC also violated § 1692f by "repeatedly assert[ing] it could collect upon the subject debt, which Plaintiff does not owe."  Complaint, ¶ 36.  The basis for this claim is the December 19, 2018 phone call placed by Plaintiff when he asked a representative of BC what were "its intentions for the debt."   The undisputed facts establish that no genuine issue for trial exists on this claim and hence, BC is entitled to summary judgment.

Section 1692f sets forth eight subsections that prohibit or restrict specific types of unfair conduct. *See* § 1692f(1)-(8) (providing nonexhaustive list of conduct including collecting unauthorized amounts of money, solicitation of a postdated check for the purpose of threatening criminal prosecution, threatening to take certain nonjudicial action and communicating by postcard). Although those prohibitions do not limit the general application of the statute, it has been interpreted to prohibit only that conduct which resembles those set forth in § 1692f. *See Maxwell v. Barney,* 2008 WL 1981666, at *5 (D. Utah 2008) (dismissing § 1692f claims when defendant's actions did not "resemble those enumerated in 15 U.S.C. § 1692f."). Accordingly, when the defendant's actions do not resemble those prohibited by § 1692f, dismissal is appropriate. *Id.*

The FDCPA does not define the terms "unfair" or "unconscionable."  Courts have construed the meaning of "unfair" as "marked by injustice, partiality or deception" and "unconscionable" as "having no conscience…unscrupulous…showing no regard for conscience…affronting the sense of justice, decency or reasonableness." *LeBlanc v. Unifund CCR Partners,* 601 F.3d 11875, 1200 (11th Cir. 2010).

Plaintiff has failed to muster facts that create genuine issue of whether BC's conduct was marked by injustice or affronted the sense of justice, decency, or reasonableness.  The Letter was the only communication sent by BC to Plaintiff.  (SOF No. 18, Exhibit A,  P. 55-56, L. 24-6).   In neither the December 18 nor December 19, 2018 phone calls did BC represent to Plaintiff that it will continue to collect on the Debt. (SOF 17, Exhibit A, P. 46, L. 20-24; P. 77, L. 23-25, recorded phone calls).  BC did not request payment from Plaintiff in either phone call. (SOF 16, recorded phone calls, Exhibit E, ¶ 10)  Plaintiff did not hear from BC, whether in writing or phone calls after December 19, 2018. (SOF 18____, Exhibit A, P. 55, 56, L. 24-6).  Far from engaging in unfair or unconscionable conduct, the record demonstrates that BC engaged in none of the conduct that resembles those set forth in § 1692f.  *See Maxwell v. Barney,* 2008 WL 1981666, at *5 (D. Utah 2008) (dismissing § 1692f claims when defendant's actions did not "resemble those enumerated in 15 U.S.C. § 1692f.").

BC also submits that the December 19, 2018 phone call does not implicate the FDCPA.  It is undisputed the phone call was placed by Plaintiff.  While the Tenth Circuit has not addressed this issue, other courts have held "the FDCPA's protections are not

triggered by communications by someone other than the debt collector." *Hawkins-El v. First Am. Funding, LLC,* 891 F.Supp. 2d 402, 411 (E.D.N.Y. 2012); *Derisme v. Hunt Leibert Jacobson, P.C.,* 880 F.Supp. 2d 311, 329 (D. Conn. 2012). "'The purpose of § 1692 is to ensure that communications *initiated by the debt collector* (not the consumer) are not abusive, deceptive, or unfair' and therefore 'when the consumer initiates the communications, many of the policy reasons disappear.'" *Derisme v. Hunt Leibert Jacobson, P.C., supra,* at 329 (emphasis in original) (quoting *Gorham-Dimaggio v. Countrywide Home Loans, Inc.,* 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005); *See Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir. 2005) ("FDCPA was passed to protect consumers from deceptive or harassing actions *taken by debt collectors."*) (emphasis in original)

The undisputed facts illustrate why one of the purposes of the FDCPA – eliminating abusive practices by debt collectors – is not served and thus, why the FDCPA does not apply to the December 19, 2018 phone call. The Plaintiff placed a phone call on December 18, 2018 stating he is not going to pay the Debt and is going to sue BC's client. (SOF No. 9, December 18, 2018 recorded call at 01:03 and 01:55). The next day Plaintiff retains his attorney. (SOF No. 11, Exhibit A, P. 42, L. 11-25). The attorney tells Plaintiff to call BC again. (SOF No. 12, Exhibit A, P. 34, L. 7-12; P. 43, L. 8-15). Plaintiff calls BC on December 19, 2018 as instructed by his attorney. (SOF. No. 13; ID.) Plaintiff asks BC what its intentions were regarding the Debt. (SOF. NO. 14, December 19, 2018 recorded call at 00:46). BC replies to collect the Debt. (SOF No. 15, Id. at 00:54). Plaintiff hangs up.

It doesn't take much to see what transpired here. Plaintiff used the December 19, 2018 phone call as a pretext to play gotcha and bait BC into violating the FDCPA. That Plaintiff placed the call on the advice of his attorney only serves to drive home the point. The FDCPA's purpose is just not furthered where the consumer voluntarily initiates the communication to inquire what a debt collector will do regarding a debt. *See Bailey v. Security Nat'l Services Corp., supra,* at 388. (the FDCPA "can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme….").

Additionally, the December 19, 2018 phone call cannot serve as the basis for a § 1692f claim because it was not "a means to collect or attempt to collect any debt." In the Tenth Circuit it is well established that not all communications from a debt collector are in connection with the collection of a debt. *See Marx v. General Revenue Corp.,* 668 F.3d 1174 (10th Cir.2011). *See Bailey v. Security Nat'l Services Corp., supra,* at 388-389 (7th Cir. 1998). (The FDCPA does not apply to every communication between a debt collector and a debtor.). The Sixth, Seventh, and Eighth Circuit Courts of Appeal have adopted an "animating purpose" test in determining whether a communication runs afoul of the FDCPA. Under this test "an animating purpose of the communication must be to induce payment by the debtor" in order to amount to a communication in connection with the collection of a debt. *See Grden v. Leikin Ingber & Winters, PC,* 643 F.3d 169 (6th Cir. 2011)*; Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 385 (7th Cir. 2010); *McIvor v. Credit Control Services, Inc.,* 773 F.3d 909 (8th Cir. 2014)*.*

In *Maynard v. Cannon,* 401 Fed. Appx. 389 (10th Cir. 2010) the Tenth Circuit found *Gburek* to be very instructive. Relying on *Gburek* the court focused on whether "the true purpose of the [communication] was to collect the debt – whether through settlement or otherwise – by placing pressure on the consumer." *Maynard v. Cannon, supra,* at 395. Further relying on *Gburek* the court held "the absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." *Id.*

The undisputed facts establish in the December 19, 2018 phone call BC responded to Plaintiff's inquiries of what it was going to do to collect the Debt. BC did not demand or request payment from Plaintiff nor did it use the phone call to induce Plaintiff into paying the Debt. (SOF No. 16, December 19, 2018 recorded call.)

Viewed under an objective standard – *See Ruth v. Triumph Partnerships,* 577 F.3d 790, 799 (7th Cir. 2009) (standard for evaluating whether a communication is made in connection with the collection of a debt is an objective standard) there are no facts, let alone disputed facts creating a triable issue that the animating purpose of the call was to induce payment from the Plaintiff. *See Harris v. Stellar Recovery,* 2015 WL 4041719 (D. Utah July 1, 2015) (granting motion to dismiss noting several circuit courts have adopted a "common sense" inquiry into the general nature of the communication to determine whether it is made "in connection with the collection of a debt" found no violation in

ministerial response to plaintiff's inquiry, rather than part of a strategy to make payment more likely.)  Accordingly, BC is entitled to summary judgment on Plaintiff's § 1692f claim.

## V. CONCLUSION

For the reasons set forth above, BC Services, Inc. entitled to summary judgment on Plaintiff's claims for relief and therefore requests that the dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this 24th day of September, 2019.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 24, 2019 I served a true and correct copy of the above and foregoing Defendant's Motion and Memorandum Brief for Summary Judgment on counsel for Plaintiff through the ECF system, addressed as follows to:

Nathan C. Volheim, Esq.
Taxiarchis Hatzidimitriadis, Esq.
Suliman Law Group, Ltd.
2500 S. Highland Ave., Suite 200
Lombard, Illinois 60148

                                    *s/ Brittany Austin*
                                    Brittany Austin - Paralegal