## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03322-STV

CLIFFORD L. EDWARDS,

      Plaintiff,

v.

BC SERVICES, INC.,

      Defendant.

_____

### ORDER
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Defendant's Motion and Memorandum Brief for Summary Judgment [#16] (the "Motion"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [#9, 12] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the instant Motion. For the following reasons, Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

## I.    UNDISPUTED FACTS

      This action arises out of Defendant BC Services, Inc.'s attempts to collect a debt from Plaintiff Clifford Edwards related to purportedly past due payments for medical services Plaintiff received from Colorado Imaging Associates ("CIA"), which is referred to

herein as the "Subject Debt." [#1 at ¶¶ 9-12] Except where expressly noted, the relevant facts are undisputed.[1]

In or around the summer of 2018, Plaintiff went to the hospital for injuries sustained in an accident. [#1, ¶ 9; #22, SOF1] Plaintiff told the hospital that the injury happened at work but provided the hospital with insurance information for his private insurance carrier. [#22, SOF2, SOF25] CIA was one of the healthcare providers who provided treatment to Plaintiff for his injuries. [*Id.* at SOF3] Following treatment, Plaintiff's private insurance carrier paid a portion of CIA's bill to CIA. [*Id.* at SOF5; *see also* #17-1 at 18, ¶ 5] After payments and adjustments from the insurance carrier were provided, there was a remaining balance due to CIA in the amount of $7.20. [#17-1 at 18, ¶ 5; #22, SOF8] On December 10, 2018, CIA referred the Subject Debt in the amount of $7.20 to Defendant. [#17-1 at 18, ¶ 6] CIA sent Defendant information concerning the Subject Debt indicating that Plaintiff had private health insurance. [#22, SOF4] It is undisputed that CIA had provided accurate information on other accounts to Defendant in the past and that Defendant relies on the information provided to it by CIA. [*Id.* at SOF23, SOF24]

On December 11, 2018, Defendant sent a collection letter (the "Collection Letter") to Plaintiff relating to the Subject Debt, notifying Plaintiff that "Your creditor, listed above, has placed your account for collection." [*Id.* at SOF6; *see also* #17-1 at 16] With regard to the amount due on the Subject Debt, the Collection Letter stated:

---

[1] The undisputed facts are drawn from the Separate Statement of Facts (the "Statement of Facts") filed with the briefing on the Motion. [#22] The Court refers to the sequentially numbered facts set forth in the Statement of Facts as "SOF#." The Court periodically cites directly to the exhibits submitted with the Statement of Facts to provide additional context.

Date: December 11, 2018      L35552-#101
Creditor: COLORADO IMAGING ASSOCIATES
Account #: 16106121
Principal: $7.20            Interest: $0.00            Balance: $7.20

[#17-1 at 16]  The Collection Letter thus reflected principal in the amount of $7.20, interest in the amount of $0.00, and a balance due in the amount of $7.20.  [*Id.*]  It is undisputed that the Subject Debt totaled $7.20 at the time the Collection Letter was sent.[2]  [#22, SOF8]  The Collection Letter was the only communication sent by Defendant to Plaintiff. [*Id.* at SOF18]

On December 18, 2018, Plaintiff called Defendant and stated that he did not owe the Subject Debt, because it was covered by workers' compensation, and stated that he was going to sue Defendant's "client" (the "December 18 Call").  [*Id.* at SOF9]  It is undisputed that Defendant did not become aware that the Subject Debt may be covered by workers' compensation insurance until the December 18 Call.  [*Id.* at SOF10]  On December 19, 2018, Plaintiff retained an attorney, who instructed Plaintiff to call Defendant again.  [*Id.* at SOF11, SOF12]  As instructed by his attorney, Plaintiff called Defendant on December 19, 2018 and asked Defendant what its intentions were regarding the Subject Debt (the "December 19 Call").  [*Id.* at SOF13, SOF14]  In response, Defendant stated on the December 19 Call that its intent was to collect the Subject Debt. [*Id.* at SOF15]  Defendant did not request payment of the Subject Debt from Plaintiff during the December 19 Call.  [*Id.* at SOF16]  Although it is undisputed that Defendant

---

[2] Plaintiff contends that the Collection Letter nonetheless was not "accurate," because Plaintiff had no obligation for the Subject Debt, because it was covered by workers' compensation.  [#22, SOF8, SOF26]  Defendant notes, however, that it is undisputed that it had no knowledge of a potential workers' compensation claim until December 18, 2018. [*Id.* at SOF10, SOF26]

did not expressly state during the December 19 Call that it would continue to seek to collect the Subject Debt from Plaintiff, the parties dispute whether that was Defendant's intent and the implication of Defendant stating that it intended to collect the Subject Debt. [*Id.* at SOF17]  Defendant did not tell Plaintiff in either the December 18 Call or the December 19 Call that the amount of the Subject Debt may change.  [*Id.* at SOF19]

After the December 19 Call, Pinnacol Assurance ("Pinnacol"), the workers' compensation carrier, contacted Defendant and stated that it would pay the Subject Debt. [*Id.* at SOF20]  Pinnacol subsequently paid the Subject Debt in the full amount of $7.20. [*Id.* at SOF21]  Upon receipt of the payment from Pinnacol, Defendant considered the debt paid in full.  [*Id.* at SOF22]

On December 26, 2018, Plaintiff filed the instant lawsuit alleging that Defendant violated two provisions of the Fair Debt Collection Practices Act ("FDCPA").  [#1]  Plaintiff first contends that Defendant violated 15 U.S.C § 1692e, which prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," by seeking to collect on a debt that Plaintiff did not owe, even after Plaintiff informed Defendant that the Subject Debt was covered by workers' compensation, and by including an interest line item in the Collection Letter.  [*Id.* at ¶¶ 29-32]  According to the Complaint, the inclusion of a reference to interest "misleadingly suggests to consumers the false possibility that Defendant could tack on additional amounts on debts that are not owed" and because Plaintiff did not owe the subject debt, "interest could not be lawfully added and/or collected from Plaintiff."  [*Id.* at ¶ 32]  Plaintiff also contends that Defendant's inclusion of the interest line item and attempts to collect a debt that Plaintiff did not owe violated 15 U.S.C § 1692f, which prohibits debt collectors

4

from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." [*Id.* at ¶¶ 33-36]

On September 24, 2019, Defendant filed the instant motion.  [#16]  Plaintiff filed his response to the Motion on October 15, 2019.  [#19]  On October 29, 2019, Defendant filed its reply in support of the Motion.  [#21]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial.  *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998).  If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim or affirmative defense on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict."  *Rodell v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331).  If the movant carries its initial burden, the burden then

shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Adler*, 144 F.3d at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).  Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise. *Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party." *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

## III.    ANALYSIS

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To succeed on a claim under the FDCPA, a plaintiff must establish the following four elements: (1) the plaintiff is a natural person who is a "consumer" under 15 U.S.C. § 1692a(3); (2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes under 15 U.S.C. § 1692a(5); (3) the defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); and (4) the defendant violated, by act or omission, a provision of the FDCPA.  *Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1103 (D. Colo. 2015).  Here, Defendant challenges only the fourth element—*i.e.*, whether any of Defendant's actions or omissions constitute a violation of any provision of the FDCPA.

Plaintiff alleges that Defendant violated Section 1692e and Section 1692f.  [#1]  Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and includes a non-exhaustive list of 16 specifically prohibited practices that violate the general prohibition against false, deceptive, or misleading representation or means.  15 U.S.C. § 1692e.  Of relevance to the instant Motion, Plaintiff argues that Defendant's conduct, in addition to violating the general prohibition, violated subsection 2(a), which prohibits the false representation of the character, amount, or legal status of any debt, subsection 5, which forbids the threat to take any action that cannot legally be taken or that is not intended to

be taken, and subsection 10, which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.[3] [#1 at ¶¶ 30-32] Section 1692f proscribes a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," and includes a non-exhaustive list of eight specifically prohibited practices that violate the general prohibition against unfair or unconscionable means.   15 U.S.C. § 1692f.   Of relevance here, Plaintiff contends that Defendant's conduct, in addition to violating the general prohibition, violated subsection 1, which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."   [#1 at ¶¶ 34-35]

The federal circuits are split with regard to the appropriate standard that should be applied in evaluating whether a debt collector's representations are false, deceptive, misleading, unfair, or unconscionable.  The majority of Circuits—including the Second, Third, Sixth, Ninth, and Eleventh Circuits—have adopted a "least sophisticated consumer" standard, whereas a minority of Circuits—including the First, Seventh, and Eighth Circuits—have adopted an "unsophisticated consumer" standard.[4]  *See, e.g.*, *Pollard v.*

---

[3] Although Plaintiff alleges violation of these subsections in the Complaint, in responding to the Motion, Plaintiff argues a violation of Section 1692e generally without invoking any specific subsection.  [#19]

[4] In practice, there appears to be little, if any, difference between the two standards.  See, *e.g.*, *Peter v. GC Servs. L.P.*, 310 F.3d 344, 348 n.1 (5th Cir. 2002) (noting that "the difference between the standards is de minimis at most"); *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996) (indicating that unsophisticated consumer standard "is a distinction without much of a practical difference in application" from the least sophisticated consumer standard).  Some courts and commentators have suggested, however, that the unsophisticated consumer standard may be more demanding for plaintiffs to satisfy.  *See, e.g.*, *Palmer v. Dynamic Recovery Sols., LLC*, No. 6:15-CV-59-ORL-40KRS, 2016 WL 2348704, at *5 n.2 (M.D. Fla. May 4, 2016).

*Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 n.4 (1st Cir. 2014) (noting Circuit split and adopting the "hypothetical unsophisticated consumer" standard); *Hatuey v. IC Sys., Inc.*, No. 1:16-CV-12542-DPW, 2018 WL 5982020, at *3 n.3 (D. Mass. Nov. 14, 2018) (identifying Circuit Split).  Although the Tenth Circuit has not expressly addressed the appropriate standard in a published opinion, it has applied the least sophisticated consumer standard in two unpublished decisions.  *See Fouts v. Express Recovery Servs., Inc.*, 602 F. App'x 417, 421 (10th Cir. 2015); *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. 1997) (unpublished table decision). Here, both parties agree that the Court should apply the least sophisticated consumer standard.  [#16 at 4-5; #19 at 4-5]  Consistent with the parties' approach, for purposes of the current Motion, the Court thus will apply the least sophisticated consumer standard to Plaintiff's claims.

The least sophisticated consumer standard is an objective standard that considers "how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the [communication] he or she receives" from the debt collector.  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).  The least sophisticated consumer, however, "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  *Ferree*, 1997 WL 687693, at *1 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).  The least sophisticated consumer standard serves the dual purpose of "(1) ensur[ing] the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect[ing] debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices."  *Clomon*, 988 F.2d at 1320.

Here, Plaintiff's Section 1692e and Section 1692f claims "stem from two instances of Defendant's conduct: (1) Defendant's attempts to collect a debt from Plaintiff which was covered by worker's compensation and which Plaintiff did not owe; and (2) Defendant's decision to send Plaintiff a collection letter which itemized the interest due on the subject debt as '$0.00.'" [#19 at 1]  The Court addresses each in turn.

### A.    Defendant's Attempt to Collect a Debt Plaintiff Did Not Owe

Defendant's Motion makes three arguments in support of its request for summary judgment on Plaintiff's FDCPA claims premised upon Defendant's attempt to collect a workers' compensation debt from Plaintiff that was not owed by Plaintiff.  First, Defendant argues that it did not violate the FDCPA by seeking to collect the Subject Debt from Plaintiff, because it "reasonably relied on the information provided by CIA that the amount sought is not a workers' compensation debt." [#16 at 10-13]  Second, Defendant argues that neither the December 18 Call nor the December 19 Call can serve as the basis for an FDCPA violation.  [*Id.* at 15-19, #21 at 9-10]  Third, Defendant argues that Plaintiff has not established that the collection efforts violated Section 1692f.  [#16 at 14-15]  The Court addresses each argument in turn.

### 1.    Defendant's Reliance on Information Provided by CIA

In the Motion, Defendant argues that it cannot be held liable under the FDCPA for seeking to collect the Subject Debt even though Plaintiff did not owe it, because Defendant reasonably relied upon information provided to it by CIA and it had no duty to conduct an independent investigation. [#16 at 10-13]  In response, Plaintiff contends that there are genuine issues of material fact with regard to whether Defendant's reliance was reasonable, and, regardless, Defendant's argument invokes the bona fide error

affirmative defense and Defendant failed to establish other elements of the defense. [#19 at 12-19] The bona fide error defense to an FDCPA claim is derived from 15 U.S.C. § 1692k(c), which provides that "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." In its reply, Defendant contends that a debt collector is not required to establish a bona fide error defense where it contends that it is not liable on FDCPA claims because it reasonably relied on information provided by its client, and even if required, that it has established a bona fide error defense. [#21 at 3-9] The Court addresses each argument in turn.

### a. Reasonable Reliance Apart from Bona Fide Error Defense

Defendant contends that "[t]he Tenth Circuit has not decided whether a debt collector must establish a bona fide error defense where it contends it is not liable on FDCPA claims because it reasonably relies on information provided by its client." [#21 at 4] Defendant further argues that, in an unpublished decision, the Tenth Circuit held without expressly mentioning the bona fide error defense, that "a debt collector is entitled to reasonably rely on its client's information and if it does so reasonably it cannot be held liable for any errors." [*Id.* (citing *Solomon v. Baer & Timberlake, P.C.* ("*Solomon II*"), 504 F. App'x 702 (10th Cir. 2012)] Although Defendant indicates that this quotation was taken from the Tenth Circuit's decision in *Solomon II*, the quote actually comes from the district court decision that was under review.[5] *See Solomon v. HSBC Mortg. Corp. (USA)*

---

[5] The Tenth Circuit's analysis in *Solomon II* was limited to the following statement: "Having reviewed the briefs, the record, the district court's decision, and the relevant legal

("*Solomon I*"), No. CIV-09-200-C, 2012 WL 1066141, at *4 (W.D. Okla. Mar. 29, 2012).

Even more problematic to Defendant's argument, the quotation from the district court's

decision is a statement of the Ninth Circuit's holding in *Clark v. Capital Credit & Collection

Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006).   *See Id.* ("The Ninth Circuit has held

that a debt collector is entitled to reasonably rely on its client's information and if it does

so reasonably it cannot be held liable for any errors.")   The language from *Clark* relied

upon by the district court in *Solomon I* and referenced by the Tenth Circuit in *Solomon II*

is specifically and expressly drawn from the bona fide error defense.[6]   *Clark*, 460 F.3d at

1176-77; *see also Solomon I*, 2012 WL 1066141, at *4; *Solomon II*, 504 F. App'x at 705.

It thus is clear that the district court's decision in *Solomon I*, which was upheld by the

Tenth Circuit in *Solomon II*, was actually premised upon the bona fide error defense.

Defendant does not cite any other authority to support its contention that a debt

collector is not required to establish a bona fide error defense where it contends it is not

liable for FDCPA violations because it reasonably relied on information provided by the

creditor.   Nor is the Court aware of any.   To the contrary, numerous courts have held that

_____

authority, we conclude that the district court correctly decided this case." *Solomon II*, 504 F. App'x at 705.

[6] The full context for the holding from *Clark* is as follows:

> Pursuant to § 1692k(c)'s bona fide error defense, a debt collector is not liable for its violations of the FDCPA if "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."   15 U.S.C. § 1692k(c).   Logically, if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors. On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report.

*Clark*, 460 F.3d at 1176-77.

a debt collector's reasonable reliance on information provided by a creditor alone is insufficient to protect it from liability under the FDCPA.  *See, e.g.*, *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1276–77 (11th Cir. 2011) (finding that "to qualify for the bona fide error defense, the debt collector has an affirmative statutory obligation to maintain procedures reasonably adapted to avoid readily discoverable errors" and a "debt collector does not fulfill this affirmative obligation by delegating it entirely to creditors"); *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) ("When we spoke in *Clark* of the nonliability of a debt collector who 'reasonably relies' on the reported debt, we were referring to a reliance on the basis of procedures maintained to avoid mistakes.").

The Court thus finds that, to the extent Defendant seeks to rely upon its purportedly reasonable reliance on information provided to it by CIA to avoid FDCPA liability, Defendant must establish a bona fide error defense.

### b.  Bona Fide Error Defense

"[A]n FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006).  The first prong of the defense is "a subjective test" of the defendant's intent in violating the FDCPA—*i.e.*, "the issue of intent becomes principally a credibility question as to the defendants' *subjective* intent to violate the [FDCPA]."  *Id.* at 728 (emphasis in original) (quotation omitted).  The second and third prongs of the defense involve objective tests.  *Id.* at 729.  The bona fide error prong "serves to impose an objective standard of reasonableness upon the asserted unintentional violation."  *Id.* (quotation omitted).  "[T]he procedures component of the bona

fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained'—*i.e.*, actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Id.*

Here, Plaintiff's argument regarding Defendant's bona fide error defense largely focuses on the procedures prong of the bona fide error defense.[7]  [#19 at 14-19] Specifically Plaintiff argues that "Defendant's Motion and the record in this matter do not illustrate that Defendant maintained any procedures to avoid errors, and further fails to establish that such procedures were reasonably adapted to avoid attempting to collect debts which are subject to a worker's compensation claim." [*Id.* at 17]  The Court agrees. Neither Defendant's Motion nor Defendant's Statement of Facts even reference the word "procedure." [*See* #16, 22]

In its reply in support of the Motion, Defendant contends that it "maintained procedures to avoid errors by requiring CIA to provide basic information with each account it refers for collection to BC." [#21 at 7]  Defendant fails to cite any record evidence to support this contention however and nothing in the record establishes that

---

[7] Although Plaintiff also argues that Defendant has not adequately proven that its reliance on the information provided by CIA was reasonable, Plaintiff does not dispute the factual basis for Defendant's contention—*i.e.*, that Defendant had no knowledge of any workers' compensation claim until the December 18 Call, that Defendant relies on the information provided by CIA, and that the information provided by CIA was accurate in the past. [*See* #19 at 12-14; *see also* #22 at SOF10, SOF23, SOF24]  Instead, Plaintiff argues that "[t]he fact that the creditor provided account information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes." [#19 at 13-14 (quoting *Reichert*, 531 F.3d at 1007)]  But as the quoted language makes clear, Plaintiff's argument with regard to the reasonableness of Defendant's reliance is likewise premised upon the procedures prong of the bona fide error defense.

Defendant "require[ed]" CIA to provide any specific types of information with regard to the debts it referred to Defendant for collection.   In the Statement of Facts, Defendant contends only that (1) "CIA sent Defendant information concerning the debt that stated Plaintiff[ ] has private health insurance" [#22, SOF4]; (2) "Defendant relies on the information provided to it by CIA" [*id.* at SOF23]; and (3) "CIA has provided accurate information in the past" [*id.* at SOF24].   Defendant's Statement of Facts thus does not establish any *requirement*—or any other procedure—that Defendant imposed to ensure that Defendant obtained complete and valid information from CIA regarding the referred debts, including information about whether the debt was subject to a workers' compensation claim.

Nor does the Affidavit of Brett P. Riley, Defendant's general counsel, submitted in support of the Motion (the "Affidavit") identify any procedures Defendant put in place to ensure that none of the debts referred to Defendant by CIA were covered by a workers' compensation claim.  [See #17-1 at 17-20]  The Affidavit states that CIA electronically transmits accounts to Defendant with information, including the debtor's insurance information, if any, about each account contained in a spreadsheet.  [*Id.* at 17, ¶ 6]  The Affidavit does not establish, however, that this specific information is *required* by Defendant or that Defendant has any procedures in place to ensure that complete and accurate data is provided by CIA.   To the contrary, the Affidavit states that the spreadsheet "is representative of the information submitted by CIA when it refers an account" and that the information provided "typically" includes insurance information.  [*Id.* at 19, ¶ 14]  The Affidavit further states that (1) CIA has referred accounts to Defendant for collection since 2013 and currently refers anywhere from 1,500 to 3,000 accounts per

month [*id.* at ¶ 13]; (2) Defendant relies on the information provided to it by CIA [*id.* at ¶14]; and (3) CIA has a history of providing reliable information and represents to BC that it provides accurate information on each account it refers" [*id.* at 20, ¶ 15]. Notably, the Affidavit does *not* state that CIA has never previously referred a debt subject to a workers' compensation claim. Instead, the Affidavit appears to acknowledge that Defendant has previously attempted to collect debts subject to workers' compensation claims. [*Id.* at 19, ¶ 9 ("When it receives information that a debt may be covered by workers' compensation no further collections are made until [Defendant] may investigate that claim.")]

The Statement of Facts and Affidavit thus, at most, establish that (1) Defendant relies upon the information provided to it by CIA, which CIA represents to be accurate and "typically" includes information regarding the debtor's insurance, if any, and (2) upon learning that a debt may be covered by workers' compensation insurance, Defendant ceases its collection efforts until it investigates the claim. The Court finds this evidence insufficient to establish, as a matter of law, that Defendant actually employed or implemented procedures to avoid errors and that any such procedures were reasonably adapted to avoid attempts to collect a debt subject to a workers' compensation claim. This Court agrees with the Ninth Circuit that "[t]he fact that [a] creditor [has] provided accurate information in the past cannot . . . act as a substitute for the maintenance of adequate procedures to avoid future mistakes." *Reichert*, 531 F.3d at 1007. Nor can a debt collector "sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence." *Id.*; *see also Owen*, 629 F.3d at 1277 (finding that debt collector cannot satisfy its "affirmative obligation [to maintain procedures reasonably

adapted to avoid errors] by delegating it entirely to creditors . . . whose actions are not even regulated by the FDCPA").

Defendant's practices of suspending its collection efforts and investigating a debt upon being notified that it may be subject to workers' compensation insurance "do not constitute procedures 'reasonably adapted to avoid' [collection] errors." *Owen*, 629 F.3d at 1275; *see also Malone v. Accounts Receivable Res., Inc.*, No. 18-CIV-81254-RAR, 2019 WL 4926294, at *6 (S.D. Fla. Oct. 6, 2019) ("Including a debt validation procedure and suspending collection efforts are statutory requirements under the FDCPA—they do not constitute procedures reasonably adapted to avoid [the specific error at issue]." (quotation omitted)).   Indeed, at the point Defendant institutes these procedures, Defendant has already violated the FDCPA by initially seeking to collect a debt that is not owed and suspension of collection efforts at that point is statutorily mandated.  *See* 15 U.S.C. § 1692g(b).

Accordingly, the Court finds that Defendant has not satisfied its burden of "demonstrat[ing] that no disputed material fact exists regarding the [bona fide error] affirmative defense."[8]  *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).   The Motion thus is **DENIED** to the extent it seeks summary judgment in favor of Defendant on

---

[8] In its reply, Defendant contends that it is entitled to summary judgment because Plaintiff "failed to adduce any evidence . . . that [Defendant] failed to have procedures that were reasonably adapted to avoid the specific error in this case." [#21 at 2]  Defendant—not Plaintiff—however has the burden to prove the essential elements of its bona fide error affirmative defense. *See Donner v. Nicklaus*, 778 F.3d 857, 876 (10th Cir. 2015) (finding that defendant seeking summary judgment on an affirmative defense must "establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case" (quotation omitted)).

Plaintiff's FDCPA claims based upon Defendant's reasonable reliance on information provided to it by CIA.

### 2. The December 18 Call and the December 19 Call

In the Motion, Defendant argues that the December 19 Call "does not implicate the FDCPA," because (1) the December 19 Call was initiated by Plaintiff, the consumer, and not Defendant, the debt collector, and (2) it was not a means to collect or attempt to collect any debt. [#16 at 15-19]  In response to the Motion, Plaintiff states that Defendant's arguments with regard to the December 19 Call "need not be addressed by the Court since, ultimately, such phone call is not necessary nor relevant to whether it was unfair for Defendant to attempt to collect a debt from Plaintiff which he did not owe." [#19 at 20-21]  The Court thus understands that Plaintiff has abandoned any FDCPA claim premised upon the December 19 Call and thus the Court **GRANTS** the Motion to the extent it seeks summary judgment on Plaintiff's FDCPA claims premised upon the December 19 Call.

For the first time in its reply in support of the Motion, Defendant argues that the same two legal arguments it made with respect to the December 19 Call in the Motion also apply to the December 18 Call. [#21 at 9-10]  Specifically, Defendant argues that "Plaintiff wholly fails to address two of [Defendant's] contentions regarding the [December 18 Call]:  (1) that communications initiated by someone other than the debt collector do not implicate the FDCPA; or (2) even if the FDCPA is implicated the call is not a communication because the animating purpose of the call was not to induce Plaintiff to pay the Debt." [*Id.* at 9-10]  Plaintiff's failure to address these contentions with respect to the December 18 Call, however, is completely understandable because the Motion did not make these legal arguments with regard to the December 18 Call but rather expressly

and exclusively raised these arguments *only* with regard to the December 19 Call.  [*See* #16 at 15 ("[T]he December 19, 2018 phone call does not implicate the FDCPA."), 17 ("Additionally, the December 19, 2018 phone call cannot serve as the basis for a § 1692f claim because it was not 'a means to collect or attempt to collect any debt.'")]  Defendant thus has waived these arguments with regard to the December 18 Call.  *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

Moreover, even if the Court were to consider these arguments with regard to the December 18 Call, the Court does not find them persuasive.  Although Plaintiff initiated the December 18 Call, he initiated that call in response to the Collection Letter, which invited Plaintiff to call Defendant by including references to Defendant's telephone number in the Collection Letter.  [*See* #17-1 at 16]  "The fact that [Plaintiff] took the bait and reached out to [Defendant] does not transform the purpose of [Defendant's] actions— the collection of [the Subject Debt]—into a benign exchange of helpful information." *Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 537 (W.D. Pa. 2012), *on reargument in part on other grounds*, 43 F. Supp. 3d 517 (W.D. Pa. 2014); *see also DeHart v. U.S. Bank, N.A.*, 811 F. Supp. 2d 1038, 1056 (D.N.J. 2011) (finding that response to consumer's inquiry for additional payoff information was actionable, because debt collector *initiated* communications with consumer by sending notice of intention to foreclose).[9]  And,

---

[9] This Court agrees with the court in *Trunzo* that the cases cited by Defendant do not "stand for the proposition that any and all responses to a consumer-initiated communication automatically fall outside of the reach of the FDCPA."  876 F. Supp. 2d at 536; *see also Chlubicki v. PennyMac Loan Servs., LLC*, No. 3:17-CV-01485, 2018 WL 1251986, at *3 (M.D. Pa. Mar. 12, 2018) ("Nothing in § 1692 compels, or even suggests,

although Defendant contends, without citation to any record evidence, that the animating purpose of the December 18 Call was not to induce Plaintiff to pay the Subject Debt, Defendant expressly told Plaintiff during the December 18 Call that it was attempting to collect the debt.   [*See* #18 (recording of December 18 Call)]   Although Defendant's disclosure during the December 18 Call may not be dispositive of whether that call constituted a communication for the purpose of collecting a debt, the Court finds it sufficient on the current record to at least create an issue of material fact on that issue. *See, e.g.*, *Trunzo*, 876 F. Supp. 2d at 536-37 (finding creditor's "use of this disclosure language demonstrates that [the communication] was a response to a consumer inquiry as well as a collection attempt"); *Lassiter v. Integrity Sol. Servs., Inc.*, No. 13-CV-00268-PAB-MJW, 2014 WL 1040677, at *4 (D. Colo. Mar. 18, 2014) (applying *Trunzo* to find that letter responding to consumer inquiry regarding debt to "at least in part" constitute a communication attempting to collect a debt, in part, because it included disclaimer).

Accordingly, the Motion is **DENIED** to the extent it seeks summary judgment in favor of Defendant on Plaintiff's FDCPA claim premised upon Defendant's attempt to collect a debt Plaintiff did not owe during the December 18 Call.

### 3.  Violation of Section 1692f

Defendant next argues that "[f]ar from engaging in unfair or unconscionable conduct, the record demonstrates that BC engaged in none of the conduct that resembles those set forth in § 1692f." [#16 at 15]  In response, Plaintiff contends that Defendant's multiple attempts—embodied in the Collection Letter and the December 18 Call—to

---

that a debt collector may enjoy 'open season' on a consumer who initiates contact with a legitimate concern.").

collect a debt that Plaintiff did not actually owe "establish[ ] that Defendant acted unfairly in attempting to collect such debt." [#19 at 20] Plaintiff further contends that "Defendant's conduct in sending the initial [Collection Letter] *alone* would be a sufficient basis for a jury to find Defendant acted unfairly in its dealing with Plaintiff." [*Id.*] Specifically with regard to Defendant's contention that its alleged conduct does not resemble that prohibited under Section 1692f, Plaintiff points to Section 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Defendant fails to address these arguments in its reply in support of the Motion. [#21] Instead, Defendant only repeats the conclusory statement that "Plaintiff utterly fails to muster any facts that [Defendant] engaged in any of the conduct that resembles those set forth in § 1692f." [*Id.* at 11]

The Court disagrees with Defendant's contention. Defendant does not dispute that Plaintiff was not responsible for the Subject Debt, because it resulted from a workplace injury and thus was covered by workers' compensation insurance. Instead, Defendant contends that Defendant was not aware of the workers' compensation claim until the December 18 Call. [#22, SOF26] Defendant further appears to acknowledge that, as a result, pursuant to Colorado Revised Statute § 8-42-101(4),[10] CIA—and thus Defendant—was not legally permitted to seek to recover the Subject Debt. [#16 at 10] Putting aside the potential bona fide error defense discussed above, the evidence is

---

[10] Pursuant to Colorado Revised Statute § 8-42-101(4), "[o]nce there has been an admission of liability or the entry of a final order finding that an employer or insurance carrier is liable for the payment of an employee's medical costs or fees, a medical provider shall under no circumstances seek to recover such costs or fees from the employee."

sufficient to support a finding that Defendant's attempts to collect the Subject Debt were not "permitted by law" and thus prohibited by Section 1692f(1). *See Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1188 (D. Utah 2019) (finding that debt collector violated Section 1692f(1) by seeking to collect a debt that was subject to workers' compensation, even if the debt collector did not have actual knowledge that it was subject to workers' compensation, because the FDCPA is a strict liability statute); *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 438 (2d Cir. 2018) (finding that plaintiff plausibly pled violation of Section 1692f(1) by alleging that debt collector sent collection letter for debt plaintiff previously settled with creditor).[11]

Accordingly, the Motion is **DENIED** to the extent it seeks summary judgment in favor of Defendant on Plaintiff's Section 1692f claim premised upon Defendant's attempts to collect a debt that Plaintiff did not owe.

### B.    The Itemization of $0.00 in the Collection Letter

Plaintiff contends that Defendant's itemization of $0.00 interest "suggest[s] the future possibility that the balance of the [Subject Debt] would increase due to interest."

---

[11] The Court acknowledges that courts have reached differing conclusions with regard to whether a single collection letter seeking to collect a debt that is not owed is sufficient to support a claim for violation of Section 1692f. *Compare Vangorden*, 897 F.3d at 438 (finding that single collection letter for debt plaintiff previously settled with creditor, even without allegations of debt collector's awareness of settlement or notification that debt was disputed, stated valid Section 1692f(1) claim) *with Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 998 (7th Cir. 2003) (finding that single debt collection letter seeking to collect debt previously discharged in bankruptcy, without evidence of debt collector's knowledge of discharge, may constitute violation of Section 1692e but not Section 1692f); *Goshon v. I.C. Sys., Inc.*, No. 14-2572-CM, 2016 WL 742873, at *3 (D. Kan. Feb. 24, 2016) (finding that "no reasonable juror could find that sending a single letter—which included notice that plaintiff could dispute the debt within thirty days—constitutes using unfair or unconscionable means to collect a debt . . . even if the debt is not owed"). However, because Defendant has not expressly raised this argument or cited any of the applicable cases, the Court does not address this split in authority.

[#19 at 6]  Plaintiff contends that "any consumer, let alone the least sophisticated one, would not equate a representation that interest has not yet accrued, as constituting a representation that such interest will not be added *in the future*."  [*Id.* at 5 (emphasis in original)]  Plaintiff clarifies, however, that his claims are not premised upon an argument that the FDCPA required Defendant "to inform [him] that interest may accrue in the future."  [*Id.* at 7]  Instead, Plaintiff argues that the inclusion of the itemization of $0.00 interest in the Collection Letter "represented that interest may accrue" and thus violated the FDCPA, because such interest, in fact, could not be added.  [*Id.*]  Plaintiff's Section 1692e and Section 1692f claims based upon the itemization of $0.00 interest thus both rest upon the same premise—*i.e.*, that Defendant's itemization of interest in the Collection Letter deceptively implied that interest may accrue on the Subject Debt in the future if not timely paid.

Defendant disputes the validity of this central premise, arguing that the Collection Letter "accurately itemizes the amount of the [Subject] Debt" and thus cannot be considered misleading or deceptive.  [#16 at 6]  According to Defendant "[n]othing in the [Collection] Letter suggests that interest may be added on or the balance due may change."  [*Id.* at 8]

The parties thus dispute how Defendant's inclusion of the $0.00 interest line in the Collection Letter would be interpreted by the least sophisticated consumer.  Neither Plaintiff nor Defendant presents any extrinsic evidence to support their interpretation.  [*See* #22]  Nor has either party presented any caselaw from the Tenth Circuit addressing

this issue, aside from a recent decision by this Court,[12] and the Court is not aware of any. Although numerous courts outside of the Tenth Circuit have addressed the exact issue presented here, those courts have reached conflicting conclusions.

Some courts have found that the inclusion of an itemization of $0.00 for interest and/or fees may imply to the consumer that such interest and/or fees will begin to accrue if the amount due is not promptly paid and that such an implication may violate the FDCPA if the debt collector does not actually have the right or intent to charge such interest or fees if the amount is not promptly paid. *See, e.g.*, *Duarte v. Client Servs., Inc.*, No. 18 C 1227, 2019 WL 4572941, at *5 (N.D. Ill. Sept. 20, 2019) (finding that itemization of $0.00 for "Other Charges" was "not plainly misleading but could cause confusion or mislead the unsophisticated consumer"); *Driver v. LJ Ross Assocs., Inc.*, No. 318CV00220MPBRLY, 2019 WL 4060098, at *3 (S.D. Ind. Aug. 28, 2019) (finding that "[b]y stating that total interest added and charges/adjustments were $0.00, it is reasonable for the letter to be read to imply that these charges could begin to accrue if [the plaintiff] did not pay the debt"); *Gaston v. Fin. Sys. of Toledo, Inc.*, No. 3:18-CV-2652, 2019 WL 2210769, at *3 (N.D. Ohio May 22, 2019) (concluding that the inclusion of interest and "other" columns with zero balances "could mislead the least sophisticated consumer"); *Lemke v. Escallate, LLC*, 374 F. Supp. 3d 727, 731 (N.D. Ill. 2019) (finding it "possible . . . that the mere notice of zero 'accrued interest' could . . . lead an unsophisticated consumer to conclude that interest might accumulate on the debt in the future"); *Wood v. Allied Interstate, LLC*, No.

---

[12] *See Alverson v. BC Services, Inc.*, No. 18-cv-02488, Docket No. 37 (D. Colo. Oct. 18, 2019) (granting Defendant BC Services' motion for summary judgment on consumer's Section 1692e and 1692f claims premised upon BC Services' itemization of $0.00 interest in a debt collection letter).

17 C 4921, 2018 WL 2967061, at *2 (N.D. Ill. June 13, 2018) (finding that itemization of "$0.00" in fees and collection costs may mislead consumer).  As the Court in *Wood* explained, "by stating that fees and collection costs stood at '$0.00,' instead of stating something like 'N/A' or declining to mention fees and collection costs at all, the letter reasonably could be read to imply that such charges would begin to accrue if [the plaintiff] did not pay the debt."  2018 WL 2967061, at *2.

Other Courts, however, have held that the inclusion of an itemization of $0.00 for interest and/or fees does not suggest anything with regard to whether interest and/or fees may later accrue if the amount is not promptly paid and thus the inclusion of the itemization is not false, deceptive, misleading, unfair, or unconscionable.  *See, e.g.*, *Qureshi v. Vital Recovery Servs., Inc.*, No. 18CV4522ENVRML, 2019 WL 3842697, at *3 (E.D.N.Y. Aug. 15, 2019) (finding that "[t]he mere inclusion of zero-balance line items for interest and fees does not imply that such charges may accrue in the future" and "has no coercive import"); *Donaeva v. Client Servs., Inc.*, No. 18-CV-6595 (BMC), 2019 WL 3067108, at *2 (E.D.N.Y. July 12, 2019) (finding that it would not "be reasonable to infer from 'Interest: 0.00' and 'Other Charges: 0.00' that the account would somehow begin to accrue fees and other charges at some later unspecified time"); *Delgado v. Client Services, Inc.* No. 17 C 4364, 2018 WL 1193741, at *1-4 (N.D. Ill. Mar. 7, 2018) (finding that collection letter which included an itemization of $0.00 in interest and $0.00 in "Other Charges" did not mislead consumer); *Dick v. Enhanced Recovery Co., LLC*, No. 15CV2631RRMSMG, 2016 WL 5678556, at *4 (E.D.N.Y. Sept. 28, 2016) (finding that inclusion of itemization of $0.00 for "Non-Interest Charges & Fees" was not deceptive or misleading).  As the court in *Dick* explained, an interpretation that the inclusion of the

itemization implies the future imposition of fees "contravenes the plain language of the Letter, which clearly sets forth the total amount of the debt and further provides an accounting of that debt." 2016 WL 5678556, at *4. According to the court in *Dick*, the inclusion of such an itemization is not false, deceptive, or misleading, because it "does not leave . . . the least sophisticated consumer[ ] in doubt of the nature and legal status of the underlying debt; nor does it impede the consumer's ability to respond to or dispute collection." *Id.*

This Court agrees with the courts that have held that a collection letter which correctly states the balance due and also includes an itemization of $0.00 interest is not false, deceptive, misleading, unfair, or unconscionable even if the debt collector has no legal right or intent to charge interest in the future.[13] More specifically, the Court agrees that "[t]he mere inclusion of zero-balance line items for interest . . . does not imply that such charges may accrue in the future." *Qureshi*, 2019 WL 3842697, at *3. Nor does the Court believe it is "reasonable to infer from 'Interest: 0.00' . . . that the account would somehow begin to accrue fees and other charges at some later unspecified time." *Donaeva*, 2019 WL 3067108, at *2. Such an interpretation "ignores the total absence of language in the letter suggesting even the slightest possibility that additional charges

---

[13] Plaintiff argues that Defendant's inclusion of the itemization of $0.00 interest was misleading, because it indicated that "Plaintiff may have to pay interest in connection with a debt which was not due and owing by Plaintiff." [#19 at 19] This argument appears to conflate the two separate types of conduct by Defendant that Plaintiff contends violated the FDCPA—seeking to collect a debt that Plaintiff did not owe and including the itemization of $0.00 interest in the Collection Letter. For the reasons explained herein, the Court finds that inclusion of the itemization of $0.00 interest in the Collection Letter did not imply that interest would begin to accrue in the future and thus does not constitute an FDCPA violation separate from the alleged violation based upon Defendant's attempt to collect a debt Plaintiff did not owe discussed in Section III(A) above.

might accrue" and renders "[P]laintiff's proposed reading . . . both idiosyncratic and irrational." *Qureshi*, 2019 WL 3842697, at *3.

Particularly given Plaintiff's failure to adduce any evidence that he or any other consumer actually was misled by the inclusion of the itemization of $0.00 interest,[14] the Court shares the *Donaeva* court's concern that "[o]nly a consumer in search of an ambiguity, and not the least sophisticated consumer relevant here, would interpret the [Collection Letter] to mean that interest was accruing" or, worse still, that only "a lawyer in search of ambiguity . . . [would] find fault with this entirely accurate and innocuous debt collection letter that does not resemble the kind of debt collection abuses that inspired the FDCPA." 2019 WL 3067108, at *4 (quotation omitted). Allowing this type of "creative" claim to succeed runs the risk of hurting, rather than protecting, the least sophisticated consumer, because "the cost of litigation in the collection industry logically must increase the cost of credit," and thereby may hurt the least sophisticated consumer "by making her

---

[14] The Court appreciates that the least sophisticated consumer standard is an objective rather than subjective standard and thus Plaintiff is not required to show that he actually was misled by Defendant's statement regarding $0.00 interest. *See Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1113 (D. Colo. 2015) (finding it unnecessary to make individual determination of each potential class member's subjective understanding of the debt collection letter in question). The Court notes, however, that several of the courts that have found that the inclusion of an itemization of $0.00 for interest and/or fees may mislead an unsophisticated consumer have nonetheless required the plaintiff to come forward with "extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Lemke*, 374 F. Supp. 3d at 732 (quotation omitted) (granting summary judgment to defendant where plaintiff failed to offer any extrinsic evidence); *see also Duarte*, 2019 WL 4572941, at *4 (granting defendant summary judgment where plaintiff failed to present extrinsic evidence to show that inclusion of itemization of $0.00 for "Other Charges" would mislead unsophisticated consumer); *Wood v. Allied Interstate, LLC*, No. 17 C 4921, 2018 WL 6830333, at *4 (N.D. Ill. Dec. 28, 2018) (granting defendant summary judgment where plaintiff failed to adduce extrinsic evidence that unsophisticated consumer would interpret itemization of $0.00 in fees to mean that fees would accrue if not paid).

pay higher interest rates, collection costs, or depriving her of access to credit at all."[15]  *Id.* (quotation omitted).

Accordingly, the Court finds that the itemization of $0.00 interest in the Collection Letter does not violate either Section 1692e or Section 1692f, because it is undisputed that the Collection Letter accurately stated the amount of the Subject Debt [#22, SOF8], and the inclusion of an itemization of $0.00 interest "does not leave . . . the least sophisticated consumer[ ] in doubt of the nature and legal status of the underlying debt . . . [or] impede the consumer's ability to respond to or dispute collection," *Dick*, 2016 WL 5678556, at *4.  Defendant thus is entitled to summary judgment on Plaintiff's Section 1692e and Section 1692f claims to the extent they are premised upon Defendant's itemization of $0.00 interest in the Collection Letter.[16]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [#16] is **GRANTED IN PART and DENIED IN PART** as follows:

---

[15] Such a risk overshadows the potential harm that would be caused if the Court is mistaken in finding that the itemization of $0.00 interest would not reasonably imply to the least sophisticated consumer that interest may accrue if the debt it not promptly paid. "[T]he only harm . . . a consumer might suffer by mistakenly believing that interest or fees are accruing on a debt is being led to think that there is a financial benefit to making repayment sooner rather than later." *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 214 (2d Cir. 2018).

[16] Defendant's Motion also argues that, even if the inclusion of an itemization of interest could be interpreted as suggesting that interest may be charged in the future, such a representation was not material and was not a misrepresentation, because Defendant had a legal right under state law to charge interest on the Subject Debt.  [#16 at 9-10, 13-14]  Given the Court's finding that the inclusion of an itemization of $0.00 interest was not false, deceptive, misleading, unfair, or unconscionable, the Court finds it unnecessary to address Defendant's arguments made in the alternative.

(1) the Motion is **GRANTED** to the extent it seeks summary judgment on Plaintiff's FDCPA claims premised upon the December 19 Call and those claims are **DISMISSED WITH PREJUDICE**;

(2) the Motion is **GRANTED** to the extent it seeks summary judgment on Plaintiff's FDCPA claims premised upon Defendant's itemization of $0.00 interest in the Collection Letter and those claims are **DISMISSED WITH PREJUDICE**; and

(3) the Motion is **DENIED** to the extent it seeks summary judgment on Plaintiff's remaining FDCPA claims premised upon Defendants' attempts to collect a debt that was not owed by Plaintiff because the debt was subject to a workers' compensation claim.

DATED:  December 10, 2019                              BY THE COURT:


s/Scott T. Varholak
United States Magistrate Judge